Cite as: Opinion No. 95-051 (November 16 , 1995)
(unpublished)

**GAMING — COUNTIES — AUTHORITY OF PRINCE GEORGE'S
COUNTY TO ISSUE JOINT AND SHARED PERMITS FOR CASINO
NIGHTS**

November 16, 1995

*Michael P. Whalen, Esquire*
*Prince George's County Attorney*

You have requested our opinion whether State law would bar certain Prince George's County proposals relating to the issuance of permits for "casino nights" conducted by charitable, civic, and similar organizations. Specifically, you have asked whether county legislation authorizing a "rotating part-time permit" or a "joint permit" would conflict with Article 27, §258B or §255(b) of the Maryland Code.

In our opinion, State law does not prevent the County from exercising the regulatory authority granted it by the General Assembly by adopting the proposed legislation.[1]

# I

## Background

The proposed casino night legislation, Bill No. CB-98-1995, is being considered in the wake of 1995 amendments to Article 27, §258B. *See* Chapter 557, Laws of Maryland 1995. These amendments expanded County regulatory authority and specifically limited the number of permits issued for the operation of casino nights to 21. Article 27, §258B(c)(5)(i). The exact language is as follows: "The number of permits issued for the operation of casino nights may not exceed 21 at any time."[2]

The proposed County legislation would categorize the 21 permits into two groups: "20 full time and one rotating part time." Proposed §5-118.04(f) of the Prince George's County Code. A full-time permit could be used by a permit holder to conduct up to three casino night

---

[1]This opinion affirms a prior letter of advice to Senator Decatur Trotter from Assistant Attorney General Robert A. Zarnoch, Counsel to the General Assembly (July 26, 1995).

[2]When the bill was introduced, the limit was 19 permits; a committee amendment increased the limit to 21. The 1995 legislation also provides that "[t]he county in its discretion may issue fewer than 21 permits." Article 27, §258B(c)(5)(ii).

events per week. Proposed §5-118.06(a)(2). Although the nature of the "rotating part time" permit is not elaborated in the bill, you have described the purpose as allowing the permit to "be issued to a group to hold a specific event. Then it would be turned back in to the County and thus available for reissuance to another group for a single event." Because "all permits" are subject to the conditions in proposed §5-118.06(a), the "rotating part time" permit could not be used for more than three casino night events per week.

The other proposal involves "joint permits." This proposal envisions an existing permit holder sharing its permit with another eligible organization. The County, not the existing permit holder, would determine eligibility. *See* Article 27, §258B(c)(6)(iv). "Such a joint permit shall constitute an amendment of the existing permit and shall not be an award of a new permit." Proposed §5-118.04.01(a)(1). The bill terms the new applicant "the subordinate joint permit holder" and requires "a written agreement concerning joint operating responsibility and division of revenue." Proposed §5-118.04.01(a)(4). Finally, the bill would hold "[b]oth eligible organizations ... responsible for meeting all reporting, permit, and tax requirements ...." Proposed §5-118.04.01(a)(3).

## II

## Analysis

Article 27, §258B(c)(3) prohibits any "person, group, or organization" from conducting a casino night "without first obtaining a permit under paragraph (2) of this subsection." These permits are to be issued by Prince George's County. §258B(c)(2)(i). Moreover, the County is given express authority to "regulate ... the issuance of written permits authorized under this subsection." §258B(c)(4). Although the General Assembly prohibited the County from issuing more than 21 permits, it did not expressly limit the County's authority to "regulate" permits by allowing more than 21 groups to share the 21 permits. Thus, neither of the proposals in Bill No. CB-98-1995 is expressly barred by Article 27, §258B or §255(b).[3]

You have suggested that a joint permit proposal might be implicitly precluded by §258B's use of singular language. *See, e.g.,* §258B(c)(3) ("*A* person, group, or organization ..."); 258B(c)(8) ("*each* person, group, or organization operating is *a* casino night permittee ..."); 258(d)(1)(iv) ("'Person' means *a* group, company, association, or corporate body, referred to in subsection (a) of this section."); 258(d)(2) ("*a* person who conducts a casino night ..."); 258B(d)(3)(i) ("*The* person that conducts a casino night ..."). However, use of the singular in legislation is not conclusive regarding an intent to preclude joint permits. In fact, Article 1, §8 of the Maryland Code provides that "[t]he singular always includes the plural, and vice versa, except

[3]In *State v. Crescent Cities Jaycees*, 330 Md. 460, 624 A.2d 955 (1993), the Court of Appeals held that casino night gambling in Prince George's County was governed by both of these provisions. Chapter 557 of the Laws of Maryland 1995 overruled this decision, at least to the extent that §255(b) was held to prohibit the tipping of volunteer dealers and workers. *See* Article 27, §258B(d)(2); House Judiciary Committee Bill Analysis on House Bill 597.

where such construction would be unreasonable." More importantly, §258B authorizes a permit to be issued not just to legally or formally organized entities but to "[a]ny group of citizens of Prince George's County" organized for charity or a similar "object." The broad term "group" surely could contemplate a pooling of interests by separate entities, *see Bath Industries Inc. v. Blot*, 305 F. Supp. 526, 537 (E.D. Wis. 1969), as long as both served a charitable or similar purpose.

You also suggest that the proposals would run afoul of two statutory requirements: that proceeds of any event inure to the "exclusive benefit" of an organization, §255(b)(1); and that members must "personally" manage and operate the event, §§255(b)(3) and 258B(a). These provisions may be taken to reflect a legislative intent to bar sharing of a permit. However, as we understand the proposals, no more than one entity will manage and operate any one event under a joint permit. Moreover, if both entities are deemed part of a "group," the "personal management" requirement of §§255(b)(3) and 258B(a) would be satisfied. As to the "exclusive benefit" prong of §255(b), it is important to note that no entity other than a charity or similarly eligible organization would benefit under the proposed permit-sharing. In addition, reading §255(b) in light of §258B's similar mandate that net proceeds of the event inure to the "group," we believe that the proposals do not offend this requirement of State law.

The validity of the proposed ordinance ultimately is to be determined by its consistency with "the purpose, aim, or policy" of the 1995 statute. *See In re Keith G.*, 325 Md. 538, 542, 601 A.2d 1107 (1992). *See also State v. Henderson*, 511 P.2d 221 (Kan. 1973) (deciding a plurality of activities/scope of license issue by reference to the policy behind the licensing statute). Clearly, the recent legislation was designed to curb the expansion of casino night gambling, while at the same time authorizing Prince George's County to regulate and tax what has become "a major source of entertainment in the County." *See* Prince George's County Legislative Position on House Bill 597 (April 4, 1995). If the proposed county legislation allowed the 21-permit ceiling to be exceeded at any one time, or authorized joint or part-time permittees to operate separate events at the same time, or exempted any party to such an arrangement from the full range of County regulation or from liability for violations of the law, we would question its consistency with the purpose of the 1995 statute. However, as we understand the proposals, none of these actions is permitted.

We do wish to point out that, although these proposals apparently would not increase the total number of casino night events permitted in the County in any given year, the regulatory burden on the County is increased in direct proportion to the number of groups that share permits. The application of each such group must be reviewed. So must its quarterly and annual reports. *See* §5-118.11. The County should exercise its discretion carefully, so as to maintain the careful regulatory control that the General Assembly envisioned.[4]

---

[4]Proposed §5-118.04.01 appears to contemplate that only one other organization would participate in a joint permit. The bill speaks of "both eligible organizations," rather than "all eligible organizations," and refers to a "subordinate joint permit holder."

**III**

**Conclusion**

In summary, it is our opinion that, although the County is not obligated by law to establish a joint permit or part-time permit program, State law would not be violated if such an ordinance were adopted.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice*

Robert A. Zarnoch
*Assistant Attorney General*